UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

BRIAN WALSH and BARBARA WALSH,              :

                Plaintiffs,              :

                           :

               v.              :

KONINKLIJKE LUCHTVAART MAATSCHAPPIJ  :
N.V. a/k/a KLM ROYAL DUTCH AIRLINES,              :

               Defendant.              :

------------------------------------ X

Civil Action No.
09 Civ 01803 (CS)

## MEMORANDUM OF LAW OF DEFENDANT KLM ROYAL DUTCH AIRLINES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF JURISDICTION ......................................................................................... 1

SUMMARY OF FACTS ........................................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................. 4

ARGUMENT ............................................................................................................................. 5

I.     THE   MONTREAL   CONVENTION   DOES   NOT   APPLY   TO
       PLAINTIFFS' CLAIMS BECAUSE PLAINTIFF BRIAN WALSH WAS
       NOT EMBARKING AN AIRCRAFT WHEN HE WAS INJURED ........................ 5

II.    KLM IS NOT LIABLE UNDER THE MONTREAL CONVENTION
       BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT THE ALLEGED
       INCIDENT CONSTITUTES AN "ACCIDENT" WITHIN THE MEANING
       OF ARTICLE 17 OF THE CONVENTION – THE *SINE QUA NON* FOR
       LIABILITY ................................................................................................................. 8

III.   PLAINTIFF BARBARA WALSH'S DERIVATIVE CAUSE OF ACTION
       FOR LOSS OF CONSORTIUM SHOULD BE DISMISSED ................................. 13

IV.    KLM IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF
       LAW ........................................................................................................................... 14

CONCLUSION ........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Air France v. Saks,
    470 U.S. 392 (1985) ......................................................................................4, 9, 10, 11

Alleyn v. Port Auth. of N.Y. and N.J.,
    58 F. Supp. 2d 15 (S.D.N.Y. 1999) ...............................................................7, 8

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) .........................................................................................14, 15

Baah v. Virgin Atl. Airways Ltd.,
    473 F. Supp. 2d 591 (S.D.N.Y. 2007) ...........................................................5

Buoncore v. Trans World Airlines, Inc.,
    900 F.2d 8 (2d Cir. 1990) ...............................................................................6

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) .........................................................................................14, 15

Day v. Trans World Airlines, Inc.
    528 F.2d 31 (2d Cir. 1975) .............................................................................5

El Al Israel Airlines, Ltd. v. Tseng,
    525 U.S. 155 (1999) .........................................................................................4, 5, 9

Fishman v. Delta Air Lines, Inc.,
    132 F.3d 138 (2d Cir. 1998) ...........................................................................9

Goenaga v. March of Dimes Birth Defects Found.,
    51 F.3d 14 (2d Cir. 1995) ...............................................................................14

Grill v. Philip Morris U.S.A., Inc.,
    653 F. Supp. 2d 481 (S.D.N.Y. 2009) ...........................................................15

Hinds v. Philippine Airlines,
    15 Av. Cas. (CCH) 17,701 (S.D.N.Y. 1979) .................................................13

In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988,
    37 F.3d 804 (2d Cir. 1994) .............................................................................13

June v. Town of Westfield,
    370 F.3d 255 (2d Cir. 2004) ...........................................................................14

Kantonides v. KLM Royal Dutch Airlines,
     802 F. Supp. 1203 (D.N.J. 1992).............................................................................6, 7

Knight v. U.S. Fire Ins. Co.,
     804 F.2d 9 (2d Cir. 1986) .........................................................................................15

MacDonald v. Air Canada,
     439 F.2d 1402 (1st Cir. 1971)...................................................................................12

McCarthy v. Northwest Airlines, Inc.,
     862 F. Supp. 17 (D. Mass. 1994) ...............................................................................8

Paradis v. Ghana Airways Ltd.,
     348 F. Supp. 2d 106 (S.D.N.Y. 2004) ........................................................................5

Powell v. Nat'l Bd. of Med. Exam'rs,
     364 F.3d 79 (2d Cir. 2004) .......................................................................................14

Rabinowitz v. Scandanavian Airlines,
     741 F. Supp. 441 (S.D.N.Y. 1990) .............................................................................7

Rafailov v. El Al Israel Airlines, Ltd.,
     2008 WL 2047610 (S.D.N.Y. May 13, 2008) ......................................................10, 11

Sethy v. Malev-Hungarian Airlines, Inc.,
     2000 WL 1234660 (S.D.N.Y. Aug. 31, 2000).......................................................9, 10

Ugaz v. American Airlines, Inc.,
     576 F. Supp. 1354 (S.D. Fla. 2008) .....................................................................11, 12

Upton v. Iran Nat. Airlines Corp.,
     450 F. Supp. 176 (S.D.N.Y. 1978) .............................................................................6

Weinstock v. Columbia Univ.,
     224 F.3d 33 (2d Cir. 2000) .......................................................................................15

**STATUTES**

28 U.S.C. § 1331 ............................................................................................................1

FED. R. Civ. P. 56(c).................................................................................................1, 14

**OTHER AUTHORITIES**

Barclay v. British Airways,
    [2008] EWCA (Civ) 1419, [1]-[39] (Eng.).........................................................................10, 11

Convention for the Unification of Certain Rules for International Carriage by Air, done at
    Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force on Nov. 4,
    2003), reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000), 3 Av.
    Law Rep. (CCH) ¶ 27,400...............................................................................................passim

## PRELIMINARY STATEMENT

Defendant Koninklijke Luchtvaart Maatschappij N.V., a/k/a KLM Royal Dutch Airlines ("KLM") respectfully submits this Memorandum of Law in support of its motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for an Order granting summary judgment and dismissing the Amended Complaint ("Complaint") on the grounds that plaintiffs cannot recover against KLM as a matter of law because: (1) plaintiff Brian Walsh was not injured while on board an aircraft or in the course of embarkation or disembarkation and, thus, cannot recover damages from KLM under the Montreal Convention;[1] (2) Mr. Walsh's alleged injuries were not caused by an "accident" within the meaning of Article 17 of the Montreal Convention and, therefore, KLM cannot be liable under the Convention; and (3) plaintiff Barbara Walsh cannot sustain a derivative cause of action for loss of society.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over plaintiffs' claims under 28 U.S.C. § 1331 as plaintiffs allege that their claims arise under a treaty of the United States commonly known as the Montreal Convention.

## SUMMARY OF FACTS

This action arises out of Mr. Walsh's trip and fall in a seating area at Schiphol Airport in Amsterdam, The Netherlands, on July 21, 2007. Plaintiffs' itinerary provided for round-trip transportation from New York to Kilimanjaro, Tanzania, via Amsterdam, The Netherlands. See Plaintiffs' Itinerary, annexed as Exhibit "1" to the Declaration of Annelies Dol ("Dol Decl.").

---

[1]    Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force on Nov. 4, 2003), reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000), 3 Av. Law Rep. (CCH) ¶ 27,400 ("Montreal Convention").

705946v.1

On the morning of July 21, 2007, plaintiffs and their traveling companion arrived at Schiphol Airport to travel on their connecting flight from Amsterdam to New York, the KL 641, following a three to five hour layover. See Deposition of Brian Walsh at 17:4 – 17:8, 18:8 – 18:12, annexed hereto as Exhibit "A" ("Brian Walsh Dep."); see also Deposition of Barbara Walsh at 14:9 – 14:18, annexed hereto as Exhibit "B" ("Barbara Walsh Dep."); see also Am. Complaint at ¶ 4. Upon arrival at Schiphol Airport, the group ate a meal, walked around the airport, and "window shopped." See Brian Walsh Dep. at 19:12 – 19:20; see also Barbara Walsh Dep. at 13:11 – 14:5, 14:19 – 14:21. Approximately one to two hours prior to the scheduled departure time of the KL 641, the group walked to seating area D7. See id. at 14:22 – 15:3. They then sat in the row of chairs depicted in the photograph annexed as Exhibit "2" to Dol Decl. See id. at 16:22 – 17:7. Mr. Walsh sat in the left-most chair depicted in the photograph, and Mrs. Walsh and their friend sat to his right. See id. 17:13 – 17:17. They remained seated for approximately an hour. See id. at 17:18 – 17:20.

Approximately thirty to forty-five minutes prior to the departure time for their KLM flight to New York, plaintiffs and their friend rose from their seats after hearing an announcement regarding the boarding of their flight. See id. at 21:2 – 21:23. Mr. Walsh turned to his left to approach the line of people depicted on the right-hand side of Exhibit "2" to Dol Decl. See id.; see also id. at 29:4 – 29:9; see also Brian Walsh Dep. at 32:5 – 32:18. As he was walking, one of his feet hooked under the metal bar next to his seat. See id.; see also id. at 36:22 – 37:12. This caused him to fall forward and land on his elbow. See id. at 37:23 – 38:3. Mr. Walsh sustained a fractured elbow.

Mr. Walsh testified that the metal bar and seating area depicted in Exhibit "2" to Dol Decl. and in the photograph annexed as Exhibit "3" to Dol Decl. portray the D7 seating area

and the bar over which Mr. Walsh allegedly tripped.  See id. at 23:23 – 24:8.  He testified further that the bar is eight to ten inches above the ground (see id at 53:22 – 54:4) and extends approximately four to six feet beyond chair in which he was sitting.  See id at 32:25 – 33:7.  At the time Mr. Walsh tripped, he was carrying a knapsack over his right shoulder and a shopping bag in his left hand.  See id. at 33:21 – 34:6.  He did not look down at the floor where he was walking prior to falling; rather, he looked straight ahead.  See id. at 38:6 – 38:22.  Mr. Walsh had not been pushed or shoved prior to falling.  See id. at 37:18 – 37:19.

The D7 seating area is maintained, operated and controlled exclusively by Schiphol Airport, and is depicted in Exhibit 4 to Dol Decl., a diagram of "D Pier" at Schiphol Airport, in the area marked "A."  See Dol Decl. at ¶¶ 6, 10, 11.  D7 is a public seating area close to many publicly-accessible amenities in Schiphol Airport, including restaurants, boutiques, and restrooms.  See id. at ¶ 8.  Passengers of any arriving or departing flight may sit in the D7 seating area.  See id. at ¶ 7.  Passengers seated in the D7 seating area are free to leave the area.  See id.

Prior to embarking a departing flight, passengers must first leave the D7 seating area and submit to additional security screening and a check of their boarding passes, which takes place in the area marked with a "B" in Dol Decl., Ex. 4.  Passengers must then enter a separate sterile seating area reserved exclusively for passengers traveling on that flight.  See id. at ¶ 9.  Finally, prior to boarding the aircraft, passengers must walk from the sterile seating area to the jet bridge connecting the aircraft to the terminal, marked with a "C" in Dol Decl., Ex. 4.

The metal bar over which Mr. Walsh allegedly fell is a permanent fixture in the D7 seating area.  See id. at 14.  The bar was designed and installed to collect baggage carts like the ones shown in Exhibit "2" to Dol Decl. and to prevent them from striking seats or entering the seating area.  See id. at ¶ 15.  The bar was functioning properly on July 21, 2007.  See id. at ¶

16.  Metal bars identical to the one shown in the photographs are installed in and around seating areas throughout Schiphol Airport.  See id. at ¶ 17.

## SUMMARY OF ARGUMENT

The Montreal Convention exclusively governs the rights and liabilities of passengers and carriers in international air transportation.  See El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 162 (1999).  Under the Convention, a carrier will be liable for damages arising from a passenger's injury or death if the event or occurrence that caused the injury was an "accident" that took place aboard an aircraft or during the course of embarkation or disembarkation.  See Montreal Convention, Art. 17; see also Air France v. Saks, 470 U.S. 392 (1985).

Summary judgment should be granted and the Complaint dismissed as a matter of law because Mr. Walsh was not injured while in the course of embarking the aircraft, as plaintiffs allege, and thus plaintiffs cannot recover against KLM under the Montreal Convention. Additionally, even if Mr. Walsh had been embarking the aircraft, plaintiffs cannot show an "accident" within the meaning of Article 17 of the Montreal Convention proximately caused Mr. Walsh's alleged injuries, the sine qua non for liability in a Montreal Convention case. Accordingly, KLM cannot be liable to plaintiffs as a matter of law.  Additionally, Mrs. Walsh's derivative cause of action for loss of society cannot be sustained if her husband's cause of action is dismissed.

4

# ARGUMENT

## I

## THE MONTREAL CONVENTION DOES NOT APPLY TO PLAINTIFFS' CLAIMS BECAUSE PLAINTIFF BRIAN WALSH WAS NOT EMBARKING AN AIRCRAFT WHEN HE WAS INJURED

The exclusive cause of action for personal injury under the Montreal Convention is set forth in Article 17, which states:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

See Montreal Convention, Art, 17; see also Tseng, 525 U.S. at 173.[2]  Thus, an airline has no liability under the Montreal Convention if the passenger was neither aboard the aircraft nor engaged in embarkation or disembarkation at the time of his injury.

The U.S. Court of Appeals for the Second Circuit has established a "tripartite test based on activity (what the plaintiffs were doing), control (at whose direction) and location" to determine whether a passenger was in the process of embarking or disembarking.  See Day v. Trans World Airlines, Inc. 528 F.2d 31, 33-34 (2d Cir. 1975), cert. denied, 429 U.S. 890 (1976).

---

[2]      Because the Montreal Convention recently came into force in the U.S., it is well-settled that it is appropriate for courts to rely on cases interpreting a provision of the earlier Warsaw Convention where the equivalent provision in the Montreal Convention is substantively the same. See Baah v. Virgin Atl. Airways Ltd., 473 F. Supp. 2d 591 (S.D.N.Y. 2007) (Stein, D.J.); see also Paradis v. Ghana Airways Ltd., 348 F. Supp. 2d 106, 110-11 (S.D.N.Y. 2004) (Stein, D.J.), aff'd, 194 Fed. Appx. 5 (2d Cir. 2006).

The Senate Foreign Relations Committee's report on the Montreal Convention stated:

> In the nearly seventy years that the Warsaw Convention has been in effect, a large body of judicial precedent has been established in the United States.  The negotiators of the Montreal Convention intended to preserve these precedents.

S. Exec. Rep. 108-8, at 3 (2003).

Subsequent decisions by this Court have referenced four factors to assist in such a determination:

> (1) The passenger's physical proximity to the gate;
>
> (2) The passenger's activity at the time of the incident;
>
> (3) The degree of control exerted by the carrier over the passenger at the time of the incident; and
>
> (4) The imminence of boarding.

See Buoncore v. Trans World Airlines, Inc., 900 F.2d 8, 11 (2d Cir. 1990).

The drafters of the Conventions "rejected sweeping liability for the entire period between the time a passenger enters the airport until he is safely on board the aircraft." See Upton v. Iran Nat. Airlines Corp., 450 F. Supp. 176, 178 (S.D.N.Y. 1978). Additionally, a "carrier's call for passengers to proceed to the flight gate does not necessarily signal the commencement of the embarkation process since the carrier does not exercise control and supervision over passengers who have not checked-in and are not obliged to respond to the call." See Elmar Giemulla et al., Montreal Convention Article 17-24, 59 (Elmar Giemulla & Ronald Schmid eds., 2008) (2006). Furthermore, passengers injured in an area of the airport that is accessible only to departing or arriving passengers, such as a departure lounge, "still have not commenced embarkation since they remain in an area controlled by several different carriers." See id. at 58 (citing Kantonides v. KLM Royal Dutch Airlines, 802 F. Supp. 1203 (D.N.J. 1992)).

In Kantonides, plaintiff was scheduled to travel from New York to Cyprus with a stopover in Amsterdam, The Netherlands. See id. at 1204. When plaintiff arrived at Schiphol Airport, she was informed by KLM personnel that her connecting flight was to depart from another location in the terminal approximately one hour later. See id. at 1204-1205. The area

between the arrival and departure gates was accessible only by ticketed passengers, and they were free to roam the areas between gates. See id. at 1210. As plaintiff was walking on a moving walkway to reach the departure gate approximately thirty minutes prior to the connecting flight's departure time, plaintiff fell and was injured. See id. The court held that plaintiff was not "embarking" at the time of her injury because plaintiff was injured approximately thirty minutes prior to the flight's departure time in a "common area" of the terminal. See id. at 1210. Additionally, "there was no evidence [plaintiff was] led by KLM personnel onto the moving walkway." See id. Furthermore, plaintiff had been "intermixed" with passengers departing on other flights, and the "passengers for the flight to Cyprus had not yet been congregated into a specific geographical area." See id. at 1211. Finally, "there is no suggestion that KLM personnel were near the moving walkway, monitoring it or instructing passengers to use it." See id.

Like plaintiff in Kantonides, Mr. Walsh's activity and location, and the lack of control exerted by KLM, demonstrate that Mr. Walsh was not embarking at the time he was injured. First, he was injured approximately thirty to forty-five minutes prior to the scheduled departure time of the KL 641. See Barbara Walsh Dep. at 21:2 – 21:23. Additionally, he was injured while present in a common area of the terminal, in which passengers from any arriving or departing flight were permitted to sit, and which Mr. Walsh was free to leave to visit the terminal's restaurants, boutiques, and restrooms; he had not yet reached the sterile area reserved exclusively for passengers on his flight. See Dol Decl. at ¶¶ 7-9; see also Rabinowitz v. Scandanavian Airlines, 741 F. Supp. 441, 446 (S.D.N.Y. 1990); cf. Alleyn v. Port Auth. of N.Y. and N.J., 58 F. Supp. 2d 15, 21-22 (S.D.N.Y. 1999). Furthermore, Mr. Walsh was not under the "control" of KLM because he was not in a "restricted area" controlled by KLM and reserved

exclusively for the passengers on his flight, "designed to limit access" to passengers departing on the KL 641.  See Alleyn v. Port Auth. of N.Y. and N.J., 58 F. Supp. 2d at 21-22.  On the contrary, the D7 seating area is controlled and maintained exclusively by Schiphol Airport, and not by KLM.  See Dol Decl. at ¶ 6; cf. Alleyn, 58 F. Supp. 2d at 21-22.

Additionally, although Mr. Walsh approached the line of passengers after hearing an announcement over an intercom, embarkation had not commenced.  See Giemulla, Montreal Convention Article 17-24, 59.  Boarding was not imminent, as Mr. Walsh was several important steps away from boarding the aircraft: he was not yet in the sterile area reserved exclusively for passengers boarding the KL 641, and had yet to undergo the additional security screening and a check of his boarding pass.  See Dol Decl. at 7 and 9.  See also McCarthy v. Northwest Airlines, Inc., 862 F. Supp. 17, 21-22 (D. Mass. 1994) (holding that a passenger was not embarking an aircraft when she was injured in an area not "under the exclusive control of" the airline, even though she "had been instructed to follow the [airline's] agent and… risked missing her flight if she strayed"), aff'd, 56 F.3d 313 (1st Cir. 1995).

In sum, Mr. Walsh was not embarking the KL 641 when he was injured because 1) he was not under the exclusive control of KLM; 2) he was situated in a common area of the terminal not confined to departing passengers and in which any passenger from any arriving or departing flight was permitted to sit; and 3) boarding was not imminent.  Accordingly, KLM cannot be liable for Mr. Walsh's injuries as a matter of law.

## II

### KLM IS NOT LIABLE UNDER THE MONTREAL CONVENTION BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT THE ALLEGED INCIDENT CONSTITUTES AN  "ACCIDENT" WITHIN THE MEANING OF ARTICLE 17 OF THE CONVENTION –THE *SINE QUA NON* FOR LIABILITY

In an action arising under the Montreal Convention, plaintiff has the burden of

establishing the occurrence of an "accident" within the meaning of Article 17, the <u>sine qua non</u> for imposition of liability under the Convention. <u>See</u> <u>Tseng</u>, 525 U.S. at 162; <u>see also</u> <u>Air France v. Saks</u>, 470 U.S. 392 (1985). The Supreme Court has held that if recovery for personal injuries sustained aboard an aircraft is not allowed under the Convention, then recovery "is not available at all." <u>Tseng</u>, 525 U.S. at 159 (1999).

While the (old) Warsaw and (new) Montreal Conventions do not define what type occurrence may be considered an "accident" under Article 17, the U.S. Supreme Court, in <u>Air France v. Saks</u>, defined an "accident" as follows:

> We conclude that liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an *unexpected or unusual event or happening that is external to the passenger*.

470 U.S. at 405 (emphasis added). The <u>Saks</u> Court further held that:

> The "accident" requirement of Article 17 . . . involves an inquiry into the nature of the event which *caused* the injury rather than the care taken by the airline to avert the injury.

<u>Id.</u> at 407 (emphasis in original).

An "accident" has not occurred "when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." <u>Id.</u> at 406; <u>see also</u> <u>Fishman v. Delta Air Lines, Inc.</u>, 132 F.3d 138, 143 (2d Cir. 1998) (noting that "a claim *does* allege an "accident" if it alleges some inappropriate or unintended happenstance in the operation of the aircraft or airline") (emphasis in original); <u>see also</u> <u>Sethy v. Malev-Hungarian Airlines, Inc.</u>, No. 98 Civ. 8722, 2000 WL 1234660, at *3 (S.D.N.Y. Aug. 31, 2000) (Schwartz, D.J.) (noting that an occurrence may be an accident when it is the result of the "abnormal or unexpected operation of the aircraft or conduct of airline personnel").

For example, this Court recently held that a plaintiff's slip and fall on a discarded

plastic bag that was littered on an aircraft **floor** four hours into an international flight was not an "accident" within the meaning of Article 17 **of** the Montreal Convention. <u>Rafailov v. El Al Israel Airlines, Ltd.</u>, No. 06 CV 13318, 2008 WL 2047610 (S.D.N.Y. May 13, 2008) (Daniels, D.J.). While an individual passenger may not expect to encounter a slippery plastic bag on an aircraft floor, the court held that debris of this type is "customary" on an aircraft floor four hours into an international flight and, therefore, it was neither "unusual" nor "unexpected." <u>See id.</u> at *3; <u>see also Sethy</u>; 2000 WL 1234660, at *3 (holding that tripping over luggage in an aircraft aisle during boarding is not an "accident" because "there is nothing unexpected or unusual about the presence of a bag in or near the aisle during the boarding process").

The Supreme Court noted in dicta in <u>Saks</u> that "[i]n determining precisely what causes can be considered accidents, we find the opinions of our sister signatories to be entitled to considerable weight."  470 U.S. at 404 (internal quotations omitted).  In an English case with facts similar to the case at bar, a passenger was walking through a row of seats on an aircraft when she slipped on a plastic strip embedded within the floor.  <u>Barclay v. British Airways</u>, [2008] EWCA (Civ) 1419, [1]-[39] (Eng.), annexed hereto as Exhibit "C." The plastic strip covered the "seat fix tracking" and was standard on that aircraft model.  <u>Id.</u> at [5].  Applying the <u>Saks</u> definition of an "accident," the English Court of Appeal concluded that the passenger's fall was not an "accident" under the Montreal Convention because there had been no "distinct event, not being any part of the usual, normal and expected operation of the aircraft, which happen[ed] independently of anything done or omitted by the passenger." <u>Id.</u> at [35].  Rather, the passenger's fall was caused by her reaction to a permanent fixture that was part of the operation of the aircraft.  <u>Id.</u> at [34] – [35].  The Court noted further that if the incident at issue was an "accident," then

> [a]ny slip and fall resulting merely from contact with an inert piece
> of equipment, installed and operating as intended, would constitute
> an accident.  Indeed, it is hard to see how *any* injury, save only one
> caused by an autonomous collapse or deterioration in the
> passenger's state of health having nothing to do with the conditions
> on the aircraft, would be excluded.

Id. at [34] (emphasis in original).

The alleged incident in the case at bar does not constitute an "accident" under the Montreal Convention because the cause of the injury – the metal bar – was a part of the normal, expected operation of the airport terminal.  It is a standard, permanent airport fixture whose purpose is to prevent baggage carts from striking chairs in the seating area, and, on July 21, 2007, it was functioning as expected and intended.  See Dol Decl. at ¶ 14-17.  Like plaintiffs in Rafailov and Barclay, Mr. Walsh was injured by an object that he apparently did not previously see and whose presence he was not personally expecting.  However, the metal bar, like the slippery plastic bag in Rafailov and the unnoticeable plastic strip in Barclay, was an objectively ordinary, expected item in the airport terminal.  Mr. Walsh's fall over the bar was his own internal reaction to an "inert piece of equipment, installed and operating as intended."  See Barclay at [34].  Therefore, the bar was not an "accident" as defined by Saks and its progeny.

Courts have also reasoned that an airport condition's open and obvious nature is a relevant factor in determining whether a plaintiff's injury constitutes an "accident."  In Ugaz v. American Airlines, Inc., 576 F. Supp. 1354, 1359 (S.D. Fla. 2008), plaintiff ascended a visibly inoperable escalator while carrying her heavy rolling carry-on luggage and a smaller bag.  After initially attempting to pull the heavier bag up the steps, plaintiff began to lift the bag and, while doing so, fell and was injured.  Id.  Noting that "[t]he inoperability of an escalator bears more similarity to a case of luggage in the aisle or a slippery plastic bag under a seat than to a hypodermic needle protruding from a seat or liquor bottles raining down from an overhead

11

compartment," the court concluded that only an "internal condition" was the cause of the incident and that no external force caused the fall on an escalator plaintiff knew was not functioning properly. Id. at 1366. The court noted further that "there were no foreign substances on the stairs, jostling passengers or other direct outside influence that caused the Plaintiff's fall apart from her own decision to climb" the escalator. Id. The District Court concluded that a stationary, inoperative escalator was not an unusual or unexpected event, and, accordingly, plaintiff was not injured as the result of an "accident."

In MacDonald v. Air Canada, 439 F.2d 1402, 1404 (1st Cir. 1971), plaintiff fell for unknown reasons while standing in the baggage delivery area of the airport. The Frist Circuit affirmed the District Court's finding that even if plaintiff had fallen over a piece of luggage, "it would be speculation to say that it was the bag which caused the fall. The area was well lighted. Plaintiff fell forward, and any bag in front of her must have been clearly evident." Id. at 1404-1405. Therefore, plaintiff failed to prove an accident since "it seems as reasonable to suppose that some internal condition was the cause of the fall." Id.

Like plaintiff in MacDonald, Mr. Walsh's fall was the result of his own "internal reaction" to a "clearly evident" object. Mr. Walsh testified that the photographs accurately depict the scene of his incident (see Brian Walsh Dep. at 23:23 – 24:8), and they show that the terminal is well-lit. See Dol Decl., Exs. "2" and "3." The bar measures the length of the entire row of chairs in which Mr. Walsh was sitting (see id.), it is silver, shiny, and several inches wide (see id.), and it was "sticking out in the [seating] area." See Brian Walsh Dep. at 25:14 – 25:16. Mr. Walsh testified further that the bar extends four to six feet to the left of the chair in which Mr. Walsh sat for nearly an hour, and it is elevated eight to ten inches off the ground. See id. at 32:25 – 33:7; 53:22 – 54:4. Finally, like the plaintiff in Ugaz, Mr. Walsh was not pushed prior to

12

falling and was carrying two pieces of carry-on luggage at the time he fell. See id. at 37:18 – 37:19; 33:21 – 34:6. Mr. Walsh also never looked down when he was walking, only looking straight ahead. See id. at 38:6 – 38:22.

In summary, Mr. Walsh's fall was the result of his own internal reaction to an expected, properly functioning, open and obvious airport fixture readily apparent to an observer in a well-lit environment.

Therefore, Mr. Walsh's injury was not proximately caused by an "accident" within the meaning of Article 17 of the Montreal Convention and KLM cannot be liable as a matter of law.

### III

### PLAINTIFF BARBARA WALSH'S DERIVATIVE CAUSE OF ACTION FOR LOSS OF CONSORTIUM SHOULD BE DISMISSED

Plaintiff Barbara Walsh has asserted a cause of action for loss of the "society, services, care, comfort and consortium of her husband...." See Am. Complaint. at ¶ 29.[3]

Claims for "loss of society" have been allowed by courts when an incident causing the injuries satisfies the requirements of Article 17. See In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988, 37 F.3d 804, 810 (2d Cir. 1994). Generally, if the air carrier is found liable to a passenger under Article 17, "loss of society" damages are subsumed into the general finding of damages, and are subject to the damage recovery limitations of Article 22 of the Convention. See Hinds v. Philippine Airlines, 15 Av. Cas. (CCH) 17,701 (S.D.N.Y. 1979), annexed hereto as Exhibit "D." In this case, plaintiff Brian Walsh's cause of action for bodily injuries should be dismissed because, as discussed above, KLM cannot be liable under the Montreal Convention as a matter of law. Because Mr. Walsh's cause of action, through which

---

[3]      Plaintiff Barbara Walsh does not claim she suffered any independent physical injuries.

plaintiff Barbara Walsh derives her cause of action, should be dismissed, Mrs. Walsh's derivative cause of action for "loss of society" should also be dismissed.

IV

## KLM IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the evidence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   Summary judgment is appropriate "if the pleadings, depositions . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); June v. Town of Westfield, 370 F.3d 255, 257 (2d Cir. 2004).   Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).   A fact is "material" if it "might affect the outcome of the suit under governing law." Id.   "An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (citation omitted).

The movant bears the initial burden of showing the absence of any genuine issue of material fact, which may be "satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Celotex, 477 U.S. at 323.   "The burden then shifts

14

to the nonmoving party to present evidence sufficient to satisfy every element of the claim." Grill v. Philip Morris U.S.A., Inc., 653 F. Supp. 2d 481, 485 (S.D.N.Y. 2009) (Seibel, D.J.) (internal quotations omitted).  When deciding a motion for summary judgment, a court should not "weigh the evidence and determine the truth of the matter but determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  In determining whether a genuine issue exists, the court must view the evidence presented in the light most favorable to the party opposing the motion.  Weinstock v. Columbia Univ., 224 F.3d 33, 40 (2d Cir. 2000).

To defeat a summary judgment motion made by the party not having the burden of proof, the other party must make a showing sufficient to establish the existence of every element essential to that party's claim.  Celotex, 477 U.S. at 322.  When the party with the burden of proof fails to make such a showing, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Id. at 323.  The non-movant cannot meet this burden by simply relying on mere conclusory allegations, speculation or conjecture. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).  "The mere scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  Anderson, 477 U.S. at 252.

Based on the undisputed facts of this case, summary judgment is appropriate because Mr. Walsh was not embarking the KL 641 when he was injured, and thus cannot recover under the Montreal Convention as a matter of law.  Additionally, plaintiffs cannot establish that an "accident" within the meaning of Article 17 of the Montreal Convention proximately caused Mr. Walsh's alleged injury.  Finally, Mrs. Walsh cannot recover damages for loss of society as a matter of law.

## CONCLUSION

Based upon the foregoing, defendant KLM respectfully submits that its motion for summary judgment should be granted and that the Court should enter an Order dismissing the Complaint in its entirety, as well as such order and further relief which the Court deems appropriate.

Dated:  New York, New York
       May 7, 2010

                             CONDON & FORSYTH LLP

                             By _____
                               Stephen J. Fearon (SF 8740)
                               sfearon@condonlaw.com
                               Bartholomew J. Banino (BB 4164)
                               bbanino@condonlaw.com
                           7 Times Square
                           New York, New York 10036
                           (212) 490-9100
                           *Attorneys for Defendant*
                           *KONINKLIJKE LUCHTVAART*
                           *MAATSCHAPPIJ N.V. a/k/a*
                           *KLM ROYAL DUTCH AIRLINES*

To:     John P. Meenagh, Jr.
        KELLY & MEENAGH, LLP
        135 North Water Street
        Poughkeepsie, New York 12602
        (845) 454-4244
        *Attorneys for Plaintiffs*

16

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                         ) ss:
COUNTY OF NEW YORK     )

      Rebecca Ramirez, being duly sworn, deposes and says that deponent is not a party to the action, is over 18 years of age and resides in New York, New York.  That on the 7th day of May, 2010 deponent served the within **MEMORANDUM OF LAW OF DEFENDANT KLM ROYAL DUTCH AIRLINES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** upon:

John P. Meenagh, Jr.
KELLY & MEENAGH, LLP
135 North Water Street
Poughkeepsie, New York 12602
(845) 454-4244
*Attorneys for Plaintiffs*

at the address designated by said attorneys for that purpose by depositing same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

 

                                  Rebecca Ramirez

Sworn to before me this
7th day of May, 2010

Notary Public

BEATRIZ ROMERO
Notary Public, State of New York
No. 01RO6176808
Qualified in Orange County
Commission Expires November 5, 20 11