# EXHIBIT D

regulatory bodies, like the Civil Aeronautics Board.

There is indeed a valid distinction in law and basic policy between a limitation of liability provision (which provides a real choice to the shipper as to the election of increased limits) and a notice requirement. Although there is a strong temptation to impose the ever changing and enlightened consumer-law approach in this and similar jurisdictions to all contracts, restraint must be in fact exercised by national courts, throughout the world so that they only impose their domestic views in the most critical situations. *Reed v. Wiser* [14 Avi. 17,841], 555 F2d 1079, 1093 (2d Cir.), cert den, 434 US 922 (1977).

Accordingly, the motion and cross-motion by the defendants, Pakistan International Airlines and Pinto Trucking Co., to dismiss the complaint are granted and the plaintiff's cross-motion for summary judgment is denied.

---

## BESSIE HINDS and LENNOX HINDS v. PHILIPPINE AIRLINES, INC.

United States District Court, Southern District of New York, August 2, 1979.

**AIR CARRIER—LIABILITY—EMERGENCY EVACUATION—INJURIES.—** A passenger was entitled to a judgment of $8,188.94 for injuries incurred in the emergency evacuation of an aircraft following an aborted takeoff. In addition, the passenger's husband was entitled to a judgment of $1,000 for the loss of consortium.

Charles F. McMorrow, Westbury, New York, and Jerome Edelman, P.C., Brooklyn, New York, for Plaintiffs.

Condon & Forsyth, and Marshall S. Turner, New York, New York, for Defendant.

### Findings of Fact

GOETTEL, District Judge: 1. Plaintiffs, Lennox and Bessie Hinds, husband and wife, are now, and have been at all relevant times, citizens of the State of New Jersey.

2. Defendant PAL is a corporation duly organized and existing under and by virtue of the laws of the Republic of Philippines and has its principal place of business in the Philippines.

3. On August 19, 1977, plaintiffs were fare-paying passengers on PAL Flight No. 107 from San Francisco, California to Manila, Republic of the Philippines with an intermediate stop in Honolulu, Hawaii. On that date, at about 4:50 A.M. local (Honolulu) time at the Honolulu Airport, there was an aborted takeoff of PAL Flight No. 107 and an emergency evacuation of the passengers on board the aircraft.

4. Plaintiffs evacuated the aircraft by means of a chute from the door of the aircraft and plaintiff Bessie Hinds was struck from behind by other passengers evacuating the aircraft by means of the same chute.

5. Plaintiff Bessie Hinds was treated at the emergency room of St. Francis Hospital in Honolulu, Hawaii on August 19, 1977 and released. She was diagnosed as having a lumbar sacral strain. (No bill was rendered to Mrs. Hinds for her treatment.)

6. Plaintiff Lennox Hinds did not require medical treatment and is making no claim in this action for personal injuries to himself. He sues, however, for loss of consortium.

7. Plaintiffs remained in Honolulu for two and one half days after the accident awaiting a replacement aircraft and thereafter travelled to Manila, the Philippines, where they remained for five days. Plaintiff Bessie Hinds did not seek further medical attention in Honolulu or thereafter during the five day period she was in the Philippines.

8. On August 28, 1977, following her return home, plaintiff Bessie Hinds visited Dr. Rein, her family physician in Somerset, New Jersey for treatment of a head cold.

9. On September 9, 1977, plaintiff Bessie Hinds visited the offices of Dr. Herbert Bloom, an orthopedist, at 211 Livingston Avenue, New Brunswick, New Jersey.

10. Dr. Bloom treated plaintiff Bessie Hinds during the period September 9 to October 5, 1977. During the course of this treatment of Bessie Hinds, Dr. Bloom took x-rays of her back and neck. Dr. Bloom diagnosed plaintiff Bessie Hinds as having a back sprain.

024—47

11. During September and October of 1977 the plaintiff Bessie Hinds suffered falls at her home in New Jersey. The evidence failed to establish that these falls were caused as a result of the accident of August 19, 1977.

12. Plaintiff Bessie Hinds first visited Dr. Richard Waltier, 450 Seventh Avenue, New York City, New York, on October 19, 1977.

13. From October 24, 1977 to November 2, 1977, plaintiff Bessie Hinds was a patient in the Trafalgar Hospital at 161 East 90th Street, New York City, New York. The admitting diagnosis for plaintiff Bessie Hinds was that she had a sprain of her neck and a low back problem. Her discharge diagnosis was that she had a post-concussion syndrome, lumbro-sacral back sprain, and neck sprain.

14. The purpose of the hospital admission was to place the plaintiff in traction and to obtain consultation with specialists. The consultations could have been obtained without hospitalization. Traction was not a medically necessary procedure for treating plaintiff Bessie Hind's complaints and hospitalization was not required to effect it in any event.

15. During her hospital stay, and at various times before and after, plaintiff Bessie Hinds had been administered a variety of medical tests, including x-rays, brain scans, and electroencephalogram. All of these tests have resulted in normal impressions with no objective evidence of any illness or abnormalities.

16. Commencing with her release from the hospital, plaintiff Bessie Hinds made a number of trips to New York City to visit the office of Dr. Waltier who gave her heat lamp treatments and prescribed empirin, an analgesic. These treatments were not reasonably incurred or medically necessary to cure or alleviate her injuries. Dr. Waltier billed for 111 such visits. In order to take the heat lamp treatments, the plaintiff had to travel several hours, thereby negating any conceivable benefit to be obtained from such treatment.

17. During August of 1977, plaintiff Bessie Hinds was on vacation from her position as a key punch operator with the Boy Scouts of America, where she was employed at an annual salary of $7600. Her vacation concluded on September 9th. She was placed on sick leave and her salary continued until November 8th. At that point she commenced receiving long-term disability benefits which come from a collateral source. She has never returned to her employment.

18. The injuries received by the plaintiff Bessie Hinds disabled her from employment for a period of four months. During this same time she was unable to perform any housework and her husband suffered a loss of consortium.

19. The current symptoms of which plaintiff Bessie Hinds presently complains are not related to or caused by the accident of August 19, 1977.

20. As a result of the accident of August 19, 1977, plaintiffs suffered special damages for medical care of $1344.50. Plaintiff Bessie Hinds suffered a loss of earnings of $844.44. Plaintiff Bessie Hinds suffered general damages of $6,000. Plaintiff Lennox Hinds suffered a loss of consortium of $1,000.

## Conclusions of Law

1. This Court has subject matter jurisdiction over the action. The case was commenced in the Supreme Court of the State of New York, County of New York, and was removed to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. 1332 and 28 U.S.C. 1441. Jurisdiction is based upon diversity of citizenship in that this is a civil action wherein the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs and is between citizens of different states. Plaintiffs Lennox and Bessie Hinds are citizens of the State of New Jersey. Defendant PAL is a foreign corporation incorporated under the laws of the Republic of the Philippines and has its principal place of business in the Philippines.

2. The liability of defendant PAL to plaintiffs is not contested. The only issue tried by the Court was the issue of provable damages, which damages may not exceed $75,000 in accordance with the provisions of the Warsaw Convention (Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000) as supplemented by the Agreement Relating to Liability Limitations of the Warsaw Convention ("Montreal Agreement"), CAB Agreement 18900. This limit of $75,000 is the maximum amount of damages which may be awarded in the aggregate for the claims of both plaintiff Bessie Hinds and Lennox Hinds. *Gottlieb v. Yugoslav Airlines,* 22 Civ. 4285 (Ward, J.) (Mem.) (S.D.N.Y. Oct 2, 1973).

3. Subject to the absolute limitation of the Warsaw Convention, supplemented by the Montreal Agreement, the damages recoverable by plaintiffs Bessie Hinds and Lennox Hinds are determined according to the law of the State of New Jersey which is the state of residence and citizenship of plaintiffs.

4. Pursuant to the law of New Jersey, plaintiff Bessie Hinds is entitled to recover only reasonable compensation for her injuries including past and future expenses which are reasonable and necessarily incurred to cure or alleviate her injuries. She may recover for lost wages only to the extent that they were proximately caused by the accident for which the defendant was responsible.

5. Pursuant to the law of New Jersey, a husband may only be compensated for the reasonable value of expenses necessarily incurred for the treatment of his wife's injuries and for the reasonable value of his loss of his wife's services, society, companionship and comfort which result from his wife's injuries. *Schuttler v. Reinhardt*, 17 N.J. Super. 480, 86 A.2d 438 (1952).

6. Pursuant to the law of New Jersey, plaintiffs may not recover for medical expenses which are excessive, unnecessarily incurred or are unrelated to the injuries incurred in the accident. *Theobold v. Angelos*, 40 N.J. 295, 191 A.2d 465 (1963).

7. Where the amount and monetary extent of damages sought in a civil action is grossly exorbitant, the Court may, in its discretion, deny an award of court costs. See Fed. R. Civ. P. 54(d); *Esso Standard (Libya), Inc. v. S.S. Wisconsin*, 54 F.R.D. 26 (S.D. Tex. 1971). In this action, the damages claimed and the amount of the award sought ($450,000 for plaintiff Bessie Hinds and $50,000 for plaintiff Lennox Hinds) were so grossly exaggerated that, in the discretion of the Court, costs will not be awarded.

### Conclusion

Plaintiff Bessie Hinds is entitled to judgment for the sum of $8,188.94 and plaintiff Lennox Hinds is entitled to judgment for the sum of $1,000. The Clerk shall enter judgment accordingly.

---

## PATRICIA C. HEMPEL, ET AL. v. AMERICAN AIRLINES, INC.

New York Supreme Court, New York County, August 13, 1979.

**NEW YORK—WRONGFUL DEATH ACTION—PUNITIVE DAMAGES—EQUAL PROTECTION.**—Punitive damages are not recoverable in a wrongful death action that arose from an aircraft crash. The fact that punitive damages may be recovered in personal injury actions but may not be recovered in wrongful death actions is not a denial of equal protection.

Kreindler & Kreindler, and Milton G. Sincoff, 99 Park Avenue, New York, New York, for Plaintiff.

Bigham, Englar, Jones & Houston, and Edward M. O'Brien, 14 Wall Street, New York, New York, for Defendant.

[*Statement of case*]

GREENFIELD, Justice: In this action for wrongful death arising out of the crash of an American Airlines 727 in the Virgin Islands during a landing at Harry S. Truman Airport, defendant American Airlines has moved to dismiss the fourth cause of action which seeks recovery of punitive damages. Accordingly, the principal issue before the Court is whether punitive damages are recoverable in a wrongful death action under E.P.T.L. §5-4.3, there being no dispute as to the fact that New York law is applicable to plaintiff's claim.

Plaintiff takes the position that E.P.T.L. §5-4.3, the wrongful death statute, can be construed to permit recovery of punitive damages; however it has been expressly held that punitive damages are not recoverable under §5-4.3. See *e.g. Estrow v. Wilson*, 30 AD 2d 646; *Kollin v. Shaff*, 79 Misc 2d 49; *Eria v. Texas Eastern Transmission Corp.*, 377 F.Supp. 344, rev'd and remanded on other grounds.

[*Punitive damages*]

The wrongful death statute specifically limits recovery to "*compensation for the*