UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRIAN WALSH and BARBARA WALSH,

        Plaintiffs,

    v.

KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V. a/k/a KLM ROYAL DUTCH AIRLINES,

        Defendant.

Before: Richard K. Eaton, Judge[1]

09-civ-01803 (RKE)

---

OPINION and ORDER

Eaton, Judge: Plaintiff Brian Walsh brings this action against defendant airline Koninklijke Luchtvaart Maatschappij ("KLM") seeking damages under the Convention for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention") for injuries he sustained in the Schiphol Airport in Amsterdam on July 21, 2007. Affidavit of Brian Walsh ¶ 2 ("Walsh Aff."). In addition, Barbara Walsh has a derivative suit against the airline for loss of consortium. Defendant KLM now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[1] Judge Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

BACKGROUND

According to Mr. Walsh's testimony, at approximately 10:30 a.m. on July 21, 2007, plaintiffs and their friends landed at Amsterdam's Schiphol airport after visiting Tanzania. Walsh Dep. 17:7, Oct. 29, 2009. Because Mr. Walsh was connecting to a U.S. flight, he was not required to pass through customs. Walsh Dep. 19:2-4. Approximately forty-five minutes before his scheduled departure, Mr. Walsh made his way to the departure gate for his connecting flight, where he and the rest of his party sat in the departure gate seating area. Walsh Dep. 21:25; Walsh Aff. ¶ 6. After two boarding announcements for their flight had been made, plaintiffs and their friends arose from their seats in order to make their way to join a line of passengers for boarding Flight 641, plaintiffs' connecting flight. Walsh Aff. ¶ 6-9. In doing so, Mr. Walsh stood up from his seat and picked up a carry-on bag and a knapsack. Walsh Aff. ¶ 7. He then walked along the end of the row of seats where he had been sitting, turned to his left, and fell forward over a low-lying metal bar of a color similar to that of the floor. As a result of the fall, Mr. Walsh sustained injuries to his right elbow. Walsh Aff. ¶¶ 10-11. Mr. Walsh did not notice the bar prior to his fall. Walsh Aff. ¶ 10.

STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *June v. Town of Westfield*, 370 F.3d 255, 257 (2d Cir. 2004). In making its decision on a motion for summary judgment, the court is required to resolve all ambiguities and draw permissible factual inferences in favor of the party against whom summary judgment is sought. "Where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d. Cir. 2001).

DISCUSSION

I. The Montreal Convention

The Montreal Convention creates strict liability for an air carrier[2] when bodily injury occurs in the course of "any operations of embarking" as a result of an "accident." Montreal

---

[2] Defendant KLM does not dispute that it is an air carrier within the meaning of the Montreal Convention. Def.'s Mem. L. Supp. Mot. Summ. J. ("Def.'s Br.") 5.

3

Convention, art. 17, May 28, 1999, S. Treaty Doc. No. 106-45 (2000). The Montreal Convention establishes an exclusive cause of action such that, if the injury is covered by the Convention, local tort law cannot be grounds for liability. *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 170 (1999). To be successful under the terms of the Convention, a plaintiff must show that: (1) the injury took place in the course of embarking; and (2) the injury was the result of an accident. *See Day v. Trans World Airlines, Inc.*, 528 F.2d 31 (2d Cir. 1975).³ Thus, in order to defeat KLM's motion, plaintiffs must present evidence from which a reasonable jury could conclude that Mr. Walsh's injuries resulted from an accident that occurred while he was embarking on his flight.

II. Embarkation

In order to determine whether the injury took place in the course of "embarking," courts have employed a three-part test that examines: (1) the control the airline had over the passenger; (2) the activities of the passenger; and 3) the

---

³ It is appropriate for parties to rely on "cases interpreting a provision from the [earlier] Warsaw Convention where the equivalent provision in the Montreal Convention was substantively the same." *Baah v. Virgin Atl. Airways Ltd.*, 473 F. Supp 2d 591, 596 (S.D.N.Y. 2007). The Senate Foreign Relations Committee's report on the Montreal Convention stated: "In the nearly seventy years that the Warsaw Convention has been in effect, a large body of judicial precedent has been established in the United States. The negotiators of the Montreal Convention intended to preserve these precedents." *Id.* (quoting S. Rep. 108-8, at 3 (2003)).

location of the passenger. *Day*, 528 F.2d at 33. While each factor plays a role in the determination of embarkation, the control exercised by the airline over the individual is most indicative of whether the passenger is embarking within the Convention's meaning. *See Girard v. Am. Airlines, Inc.*, No. 00-CV-4559, 2003 WL 21989978 (E.D.N.Y. Aug. 21, 2003) (holding that a passenger was in the course of embarkation when she boarded and stepped off a bus that was transporting her from the arrival terminal to her connecting flight, because she was "acting at the direction of airline personnel").

When passengers respond to a boarding call for a flight that will soon depart, airlines have been found to be exercising control over them. *Day*, 528 F.2d at 33. In *Day*, the Court noted that "[w]hether one looks to the passengers' activity (which was a condition to embarkation), to the restriction of their movements, to the imminence of boarding, or even to their position adjacent to the terminal gate, we are driven to the conclusion that the plaintiffs were 'in the course of embarking.'" *Day*, 528 F.2d at 33-34. In *Day*, the Second Circuit found that the airline exercised control over the passenger because agents had announced the flight's departure and, as a result, the passengers were not "free agents roaming at will," as their flight was about to board. *Day*, 528 F.2d at 33.

Activities such as forming a group near the departure gate

5

have also been held to indicate embarkation. *Evangelinos v. Trans World Airlines, Inc.*, 550 F.2d 152 (3d. Cir. 1977). In *Evangelinos*, the court found that passengers who had formed a group near the gate in response to a boarding announcement, but had yet to pass through a final security check, were embarking. The court held that "by announcing the flight, forming the group and directing the passengers as a group to stand near the departure gate, TWA had assumed control over the group and . . . had assumed responsibility for the plaintiffs' protection." *Id.* at 156.

Thus, when passengers are gathered at a departure gate, their location favors embarkation. *Day*, 528 F.2d at 32. For example, in *Day*, the plaintiffs were standing in line at a departure gate where they had been "summoned." *Id.* On the other hand, where passengers have arrived early for their flight, checked-in, and received a boarding pass, but have not gone through the initial security check, the passengers' location, the lack of restriction of movement, and the remoteness in time from actual boarding did not indicate embarkation. *See Buonocore v. Trans World Airlines, Inc.*, 900 F.2d 8, 9-10 (2d Cir. 1990).

Defendant argues that KLM did not exert control over Mr. Walsh and, therefore, he could not have been embarking. Def.'s Mem. L. Supp. Mot. Summ. J. ("Def.'s Br.") 7. Defendant claims that because Mr. Walsh was seated in a common area rather than an

6

area controlled exclusively by KLM, and because he was injured approximately forty-five minutes prior to the departure time, he was free to move about and was not in the process of embarking. Def.'s Br. 8. Specifically, defendant insists that Walsh was "several important steps away from boarding the aircraft," as he had yet to undergo final security screening and had not presented his boarding pass. Def.'s Br. 8.

Plaintiffs counter that because Walsh was walking toward a line of passengers who would shortly board the flight, had been seated in an area accessible only to arriving or departing passengers near the departure gate, and was walking toward an assembled group of passengers, he was embarking. Pl.'s Mem. L. Opp. Mot. Summ. J. ("Pls.' Br.") 7. They further assert that after two boarding calls, Mr. Walsh was not free to roam, but was under the control of KLM. Pls.' Br. 7.

The evidence demonstrates that Mr. Walsh was seated at a departure gate when two boarding calls were made. He stood up in order to join a group of passengers assembled near the gate after these boarding calls. Although he had yet to surrender his boarding pass, he was taking steps toward doing so by approaching the group of people assembled near the gate. As a result, he has presented evidence sufficient for a reasonable jury to find that KLM was exercising control over him. That is, while seated in the departure gate seating area, he responded to the boarding

7

instructions by standing up, and attempted to proceed to the boarding line. Therefore, a reasonable jury could find that: (1) he was under the control of the airline and, thus, not free to roam about the terminal; (2) he was taking steps to join other passengers on his flight and, therefore, his activities indicated he was embarking; and (3) his location indicated embarkation because he was in an area used for that purpose. As to defendant's argument that, because the plane was not to depart for forty-five minutes, it was too remote in time for Mr. Walsh to be embarking, a jury could reasonably find that forty-five minutes was not too early to board an international flight. Thus, Walsh has produced sufficient evidence for a reasonable jury to find that he was in the process of embarkation at the time his injury occurred.

III. Accident

The more difficult question presented here is whether the fall qualifies as an accident. As an initial matter, it should be noted that "accident" is not defined in the Montreal Convention. In a number of cases, however, courts have examined the circumstances that give rise to liability under the Convention. The Supreme Court has said that an injury that results from an event or happening that is (1) external to the injured party, and (2) unexpected, is an "accident" under the

terms of the Convention. *Air France v. Saks*, 470 U.S. 392, 403 (1985). In reaching its holding, the Court concluded that liability under the Montreal Convention "arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger," and that the passenger need only prove "that some link in the chain was an unusual or unexpected event external to the passenger." *Id.* at 405. However, "when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 . . . cannot apply." *Id.* at 406.

When the airline is in a better position to guard against the incident than the passenger, circumstances favor that the incident was "external" to the passenger. *Girard*, 2003 WL 21989978, at *3-4. In *Girard*, the court found that defining an injury as "external" rests on a sliding scale between occurrences that the passenger is in the better position to prevent on the one side, and occurrences that the airline is in a better position to prevent on the other side. *Girard*, 2003 WL 21989978, at *9. The court then found that the airline was in a better position than the passenger to guard against the risk of defective equipment in the vehicles used to transport passengers to and from its airplanes and, as a result, the injury was external. *Id.* The *Girard* court noted that liability may be

9

placed on the airline for injuries "over which the carrier may have some measure of control and ability to insure against." *Id.* at \*9. On the other hand, "[t]he air carrier . . . could not be reasonably expected to anticipate and protect against every cause of injury which results solely from a traveler's internal reaction to normal flight operations or other like conditions peculiar to or uniquely known only by a particular passenger." *Id.* (quoting *Fulop v. Malev Hungarian Airlines*, 175 F. Supp. 2d 651, 663 (S.D.N.Y. 2001)); *see also MacDonald v. Air Canada*, 439 F.2d 1402 (1st Cir. 1971) (holding that a fall near a luggage carousel was not an "accident" because there was nothing impeding the plaintiff's surroundings, and the area was lit well enough that any impediment would have been noticeable); *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 1354 (S.D. Fla. 2008) (holding that a passenger who ascended an inoperable escalator could not recover when she fell trying to maneuver heavy bags, because the escalator's inoperability was obvious and the passenger could have prevented the injury by not using it).

In a case involving a trip-and-fall, the issue of whether the incident was "external" to the passenger is largely dependent on whether the impediment was "unexpected." For example, it has been held that slipping on water on a staircase was an accident, even though the airline had no ownership or control over the staircase, because the plaintiff could not have expected the

presence of the water. *Gezzi v. British Airways, PLC.*, 991 F.2d 603 (9th Cir. 1993).

KLM argues that the metal bar (which was part of the mechanism for storing luggage carts) was visible, functioning properly, part of the normal operation of the seating area, and an expected object. Def.'s Br. 11. Defendant argues that "Mr. Walsh's fall was his own internal reaction to an 'inert piece of equipment, installed and operating as intended.'" Def.'s Br. 11 (quoting *Barclay v. British Airways*, [2008] EWCA (Civ) 1419, [34] (Eng.)).

Plaintiffs contend that the injury was the result of an accident because the bar's presence was unexpected, the color of the bar was similar to the color of the floor, and there was no warning of its existence. Pl.'s Br. 14. Additionally, plaintiffs argue that the presence of a low-lying bar is out of the ordinary, especially in an area reserved for seating and pedestrian traffic. Pl.'s Br. 15.

The question of whether an impediment or event is unexpected is generally a question of fact. *Saks*, 470 U.S. at 403. Here, plaintiffs have put forth evidence, including photographs, indicating that the metal bar protruded past the seating area and was of a color similar to that of the floor. Walsh Aff. ¶ 1. An examination of the evidence reveals that it is by no means clear that a passenger would necessarily foresee the bar's placement.

Nor is it clear that the bar was plainly visible to airline passengers. Therefore, a reasonable jury could find that the bar was not expected and was therefore "external." Thus, plaintiffs have put forth sufficient evidence for a reasonable jury to find that the bar was external to Mr. Walsh, its presence was unexpected by Mr. Walsh, and the airline was in a better position to protect against the fall and his resulting injury. *Girard*, 2003 WL 21989978, at *9. As such, it is for the trier of fact to decide whether an "accident," as here defined, caused Mr. Walsh's injury. *Id.*

## CONCLUSION

Based on the foregoing, plaintiffs have presented evidence from which a reasonable jury could find that Mr. Walsh's injury resulted from an accident that occurred during embarkation. Accordingly, defendant's motion for summary judgment is denied.

/S/ Richard K. Eaton
Judge

Dated:  September 13, 2011
        White Plains, New York